**STATE of Minnesota, Appellant,**

v.

**Robert Philip KUNZ, Jr., Respondent.**

**No. C3–90–172.**

Court of Appeals of Minnesota.

June 26, 1990.

Review Denied Aug. 23, 1990.

Hubert H. Humphrey III, Atty. Gen., Thomas R. Hughes, Steneroden & Hughes, St. Paul, for appellant.

Sarah J. Batzli, Mark W. Gehan, Collins, Buckley, Sauntry and Haugh, St. Paul, for respondent.

Considered and decided by GARDEBRING, P.J., and NORTON and MULALLY,* JJ.

**OPINION**

NORTON, Judge.

The state appeals from a pre-trial order applying the physician-patient privilege to exclude evidence of intoxication in a DWI prosecution. We reverse.

FACTS

Respondent Robert Kunz was charged with two counts of misdemeanor DWI following a single-car accident which occurred on June 30, 1989, in St. Paul. Kunz, a St. Paul police officer, was driving an unmarked squad car. His blood alcohol level was tested only as an internal administrative measure, at police headquarters. Because of an earlier consent decree, that test could not be used in the criminal prosecution, and Count II, charging a blood alcohol

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

level over .10, Minn.Stat. § 169.121, subd. 1(d) (1988), was dismissed.

Following the accident, Kunz was driven to St. Paul Ramsey Hospital by another officer. Nurse Susan Crouch testified that Kunz was wheeled through the emergency room entrance by a uniformed officer. While taking Kunz' vital signs in the examination room, Crouch smelled the odor of alcohol. She told the charge nurse, Lucille Zimmerman, that the patient had been in a motor vehicle accident and smelled of alcohol.

Lucille Zimmerman testified that after being notified by Crouch, she walked into the examination room, to verify the information. Another officer was in the room with Kunz. Zimmerman testified she smelled a strong odor of alcohol as soon as she opened the door. She later told a police sergeant that Kunz could not leave until his blood was drawn. The officer told her "they would handle it internally." Zimmerman testified that in her opinion Kunz was under the influence of alcohol. She testified Kunz was diagnosed as having broken ribs and a possible concussion. Dr. Frascone testified he ordered a blood test, at least in part, to determine whether Kunz' slow speech pattern was the result of a head injury rather than intoxication. Dr. Frascone testified he believed Kunz was mildly intoxicated. He testified that another gentleman, not a hospital staff person, was present in the room the entire time he was examining Kunz.

The trial court granted Kunz' pre-trial motion to exclude the testimony of the three medical witnesses based on the medical privilege.

## ISSUE

Did the trial court clearly err in applying the medical privilege?

## ANALYSIS

■ In order to successfully challenge a pre-trial order, the state must show clearly and unequivocally that the trial court erred in its judgment and that the ruling will have a critical impact on the outcome of trial. *State v. Kim,* 398 N.W.2d 544, 547 (Minn.1987). Although the trial court did not dismiss Count I, there is no indication in the police reports of any other admissible evidence of intoxication. The state has shown critical impact.

The supreme court in *State v. Staat,* 291 Minn. 394, 192 N.W.2d 192 (1971) discussed the history, purpose and essential elements of the physician-patient privilege. This court in *King v. Commissioner of Public Safety,* 366 N.W.2d 613, 615 (Minn.App. 1985), reversed a trial court's application of the privilege in an implied consent proceeding. We agree with respondent's argument that *King* does not totally foreclose the application of the medical privilege to exclude medical testimony as to a patient's intoxication.

The supreme court in *Staat* identified four elements of the statutory privilege:

Accordingly, as the statute requires, we must determine whether the evidence in a particular case establishes (1) that a physician-patient relationship existed; (2) that the "information" acquired by the physician was of the type contemplated by the statute; (3) that such information was acquired by the physician in attending the patient; and (4) that the information was necessary to enable him to act in a professional capacity.

*State v. Staat,* 291 Minn. at 398, 192 N.W.2d at 196. This court in *King* held that the information sought to be disclosed was not the type contemplated by the statute, and was not necessary "to enable the physician to act in a professional capacity." *King v. Commissioner of Public Safety,* 366 N.W.2d at 615. However, the information conveyed by hospital employees in *King* related only to her admission into the hospital and her involvement in an accident. Moreover, there was testimony here that information as to Kunz' intoxication was medically necessary to diagnose the cause of symptoms which could have resulted from a suspected head injury.

The trial court concluded that the medical privilege must be applied in this case even though a third person, a police officer, was present during each medical examina-

tion of Kunz. The trial court read *Staat* as limiting the relevance of a third person's presence to the admissibility of that person's testimony. This approach, which implies that a confidential setting is not required to make the patient's communications privileged, is criticized in E. Cleary, *McCormick on Evidence*, § 101 at 251 (3d ed. 1984).

In *Staat*, an unconscious patient was brought to the emergency room, where an orderly undressed him and searched his clothing while the physician examined his condition. *State v. Staat*, 291 Minn. at 395, 192 N.W.2d at 194–95. The orderly's search revealed illegal drugs, which the physician then observed. *Id.* at 396, 192 N.W.2d at 195. The supreme court noted that the physician-patient privilege

> does not exempt a third person who overheard the conversation or gained the information, with or without the knowledge of the patient, from testifying unless the third person is an agent of the physician.

*Id.* at 401, 192 N.W.2d at 198 (citations omitted). The supreme court then analyzed the orderly's status as an agent, concluded that he was not as a matter of law acting as an agent of the physician, and noted the physician's testimony was merely corroborative of that of the orderly. *Id.* at 401–02, 192 N.W.2d at 198.

We conclude that the *Staat* court, although choosing to rest its decision on the admissibility of the orderly's testimony, did not hold that non-confidential communications are protected by the medical privilege or that the presence of a third person is irrelevant to confidentiality.

The court in *Staat* makes clear that a "confidential physician-patient relationship" must be in existence. *Id.* at 399, 192 N.W.2d at 197. The court also emphasizes that the purpose of the privilege is to "[promote] confidential communications between a patient and his attending physician." *Id.* at 397, 192 N.W.2d at 196. Subsequent cases have assumed that confidentiality is a prerequisite and that the presence of third persons is relevant to that requirement. *See, e.g., State v. Andring*, 342 N.W.2d 128, 133 (Minn.1984) (statements made in group psychotherapy sessions were privileged).

In *Andring*, the supreme court held that the medical privilege extends to statements made in group psychotherapy. *Id.* Although "third parties" are present in such sessions, these persons, other patients participating in the therapy, "are not casual third persons who are strangers to the [psychiatrist-patient] relationship." *Id.* This holding presupposes that the presence of third persons who are strangers to the physician-patient relationship would destroy the privilege. *See also State v. Gullekson*, 383 N.W.2d 338, 340 (Minn.App. 1986), *pet. for rev. denied* (Minn. May 16, 1986) (statements made by patient in presence of hospital administrators who were not customarily involved in treatment were not privileged).

■ McCormick suggests that the confidentiality requirement is violated "if a casual third person is present with the acquiescence of the patient at the consultation." E. Cleary, *McCormick on Evidence*, § 101 at 250 (3d ed. 1984). The other officer who was present at all times during Kunz' examinations was a stranger to the physician-patient relationship and was present with the acquiescence of Kunz.

Kunz argues that because the information acquired by the medical personnel was acquired by observation rather than communication, the confidentiality requirement should not be applied. However, the supreme court in *Staat* makes no distinction between the two types of data. *See State v. Staat*, 291 Minn. at 400, 192 N.W.2d at 197 (privilege extends to verbal communications and knowledge acquired through observation). We believe the statutory privilege is stretched sufficiently in applying it to indicia of intoxication which are as easily observable by laypersons. To extend it to such observations, when shared by third persons in attendance in the examination room, would carry the privilege beyond its proper purpose.

The state contends that Kunz has waived the privilege because the medical testimony was received in an administrative hearing.

However, because Kunz asserted the privilege in that proceeding, we find no waiver.

## DECISION

The trial court clearly erred in excluding testimony concerning respondent's intoxication based on the medical privilege.

Reversed.