**IN THE COURT OF APPEALS OF IOWA**

No. 14-0166
Filed April 8, 2015

IN RE THE MARRIAGE OF SHERYL A. WILSON
AND JAMES D. WILSON

Upon the Petition of
**SHERYL A. WILSON,**
        Petitioner-Appellant,

**And Concerning**
**JAMES D. WILSON,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Grundy County, George L. Stigler,

Judge.


        A former spouse appeals the district court's property distribution.

**AFFIRMED AS MODIFIED.**


        Maria L. Hartman of Sweet Law, P.L.C., Reinbeck, for appellant.

        James D. Wilson, Grundy Center, appellee pro se.


        Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

Sheryl Wilson appeals a decree dissolving her thirty-one year marriage to James Wilson. She challenges the court's property distribution provisions and spousal support award.

## I.   *Background Facts and Proceedings*

Sheryl and James Wilson married in 1982.[1] The marriage lasted thirty-one years. Sheryl worked as a nurse's aide but agreed to give up her job when she became pregnant with the first of two children. Approximately nine years into the marriage, she opened a video store and ran it for about six years. Later, she worked in a school kitchen and obtained a second job in the deli department of a grocery store. Those jobs provided wages of twelve dollars an hour and eight dollars an hour respectively and were her sole sources of employment income at the time of trial.

James served in the military until 1989, when he was medically discharged. He subsequently worked for a pipe tool company, earning as much as $64,151 annually. At the time of trial, he received tax-free social security disability and veterans benefits totaling $4830 per month.

Sheryl petitioned for a dissolution of the marriage. The district court ordered the parties not to "create any additional debt on a joint credit instrument," or "sell, dispose of, trade, secrete away, hide or destroy any assets."

James did not abide by the order, prompting Sheryl to file an application for rule to show cause why James should not be held in contempt. The district court found James withdrew approximately $26,846.26 from a home equity line

---

[1] This was their second marriage to each other. The first lasted four years.

of credit and placed the funds in a money market account in his name. The court further found he withdrew joint funds and dissipated joint assets in violation of the court order. The court determined his violation was willful. Following a hearing, the court adjudged James in contempt but, on Sheryl's request, declined to take formal action. The matter proceeded to trial.

In its dissolution decree, the district court found James wasted assets, largely through gambling. To offset the waste, the court awarded Sheryl the home, subject to indebtedness, as well as most of the household goods. The court granted her spousal support of $1100 per month until she dies or remarries. Sheryl appealed following the denial of post-trial motions.[2] James has not appeared or filed a responsive brief.

## II.     Property Distribution

### A.  Waste of Assets

The district court found James wasted $81,019.36 of joint funds. The court concluded the "entirety of [James's] waste will be assessed against James in the court's distribution of assets. . . . He and he alone should suffer from this financial harm."

On appeal, Sheryl asserts the district court "failed to actually assess the amount of the loss against [James]." She notes the home equity and value of the household goods awarded to her as an offset only totaled $45,432.78 and she should have also received a cash payment for the balance of the wasted assets. On our de novo review, we agree. Based on the district court's unchallenged

---

[2] The district court slightly modified one portion of the decree—a modification which is not relevant on appeal.

findings of the amount of waste and James's responsibility for the waste, we modify the decree to require a payment from James to Sheryl of $35,586.58 ($81,019.36-$45,432.78) within a year of the issuance of procedendo in this appeal.[3] *In re Marriage of Williams*, 421 N.W.2d 160, 164 (Iowa Ct. App. 1988) (stating "[f]ailure to disclose, secretion of assets, or transfer of assets during the dissolution process must be dealt with harshly" and considering husband's "transfer of nearly $500,000 in property, with no accounting or no plausible explanation," in assessing the property settlement).

### B. Valuation of Personal Property

Sheryl next asserts the district court incorrectly valued her glass sculpture collection at $3000. She cites her pre-trial stipulation, assigning a $400 value to the collection. However, her financial affidavit admitted at trial valued these collectibles at $3000. We conclude the district court acted equitably in adopting the most recent figure assigned by Sheryl. *See In re Marriage of Driscoll*, 563 N.W.2d 640, 643 (Iowa Ct. App. 1997) (affirming valuation of property consistent with party's financial affidavit).

### C. Double-Counting

Sheryl asserts the district court double-counted one of her retirement accounts. We agree.

---

[3] Sheryl requested an additional payment of $29,349.31 to fully compensate her for James's waste. This amount was based in part upon her remaining overvaluation and over-counting claims, discussed below. For the sake of clarity, we will address the figures separately. For purposes of this section we focus exclusively on the offset for James's waste and the unchallenged figures adopted by the district court. Based on those figures, we find the correct award to be $35,586.58.

Sheryl identified two pension accounts in her name, a Hartford 403(b) (Mass Mutual) account, and an IPERS account. The district court awarded Sheryl a 403(b) retirement plan valued at $3705.35 and a "Hartland 403(b) pension" valued at $3705, in addition to her IPERS account. The "Hartland" account was plainly duplicative of the Hartford account. Accordingly, we modify the decree to eliminate the Hartland account and we order James to pay Sheryl $1852.50 (fifty percent of the duplicated sum) within a year of the issuance of procedendo.

### III. Spousal Support

#### A. Amount

As noted, the district court granted Sheryl spousal support, reasoning James earned three times what she earned and "will continue to do so in retirement past age 66." The court further reasoned that James showed an ability to pay the $1100 per month of temporary support ordered at the outset of the proceedings. The award is to continue until Sheryl remarries or dies.

Sheryl contends the award is insufficient. She requests $1800 per month to "eliminate the income disparity that is apparent in the parties' current incomes and allow Sheryl to sustain the life she was living prior to the divorce." She also notes "the temporary order based alimony on the findings that James would continue paying household expenses of $1553.66 per month," which she will assume under the decree.

The Iowa Supreme Court recently addressed the parameters of traditional spousal support awards. *See In re Marriage of Gust*, 858 N.W.2d 402 (Iowa 2015). Considering a marriage lasting twenty-seven years, the court stated "[t]he

length of the marriage is comfortably within our caselaw where a spouse may be considered for indefinite spousal support." *Id.* at 415. The court affirmed a traditional alimony award after finding a significant disparity in the parties' earning capacities. *Id.* at 416. In doing so, the court determined its resolution was "consistent with the recommendation of the American Academy of Matrimonial Lawyers," which "urges a guideline approach where marriages over twenty years qualify for unlimited spousal support," which is "determined by taking 30% of the payor's gross income minus 20% of the payee's gross income." *Id.* at 46 n.2. The court reiterated that the district court "was in the best position to balance the parties' needs" and stated appellate courts should "intervene on appeal only where there is a failure to do equity." *Id.* at 416.

In this case, the guideline approach endorsed by the court would result in a spousal support award of just ninety-six dollars per month more than the district court awarded. Under these circumstances, we conclude the court did equity. Accordingly, we affirm the district court's award of $1100 per month until Sheryl remarries or dies.

### B. Insurance

Sheryl asserts the district court should have required James to maintain a life insurance policy to secure his alimony obligation. That type of provision is enforceable. *See In re Marriage of Debler*, 459 N.W.2d 267, 270 (Iowa 1990) (requiring payor to list payee as beneficiary on life insurance policy as long as his alimony obligation continues). However, this court has stated, "such a requirement should be imposed only when the cost is known or can be reasonably estimated and the cost is neither unduly burdensome nor out of

proportion to the benefits of providing such security." *In re Marriage of Weber*, No. 98-1688, 2000 WL 278535, at *10 (Iowa Ct. App. Mar. 15, 2000) (discussing *In re Marriage of Debler*, 457 N.W.2d 267 (Iowa 1990)).

Sheryl did not reasonably estimate or ascertain the cost. While she introduced evidence of existing life insurance policies owned by James and the premiums on those policies, she did not establish it would cost the same amount to "maintain life insurance on his life with a death benefit in excess of policy loans of at least $50,000, payable to the petitioner," as she requested. She also provided no evidence to support her trial assertion that James might be eligible for a free veterans' group life insurance policy. For these reasons, we decline Sheryl's request for an order requiring the purchase of life insurance to secure James's spousal support obligation.

## IV.    *Attorney fees*

Sheryl asserts the district court should have granted her more than $2500 in trial attorney fees. The award was discretionary. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Suffice it to say we discern no abuse of discretion.

Sheryl also requests $5000 in appellate attorney fees. Because she has prevailed on certain issues raised in her appeal, we order James to pay $2500 towards her appellate attorney fee obligation.

## V.    *Disposition*

We affirm all portions of the dissolution decree except the property division provisions. We modify the property division to require payment by James to Sheryl of $35,586.58 for waste and $1852.50 for double-counting within a year of

the issuance of procedendo in this appeal, together with $2500 in appellate attorney fees. Costs on appeal are assessed to James.

**AFFIRMED AS MODIFIED.**

Potterfield, J., concurs; Vogel, P.J., concurs specially.

**VOGEL, P.J. (concurring specially)**

I concur in the majority's decision and write separately only to clarify that I would not require parties to offer evidence of an insurance policy's cost or availability as a prerequisite to obtaining an order from the court requiring an insurance policy to secure a support obligation. While the cost and availability of an insurance policy is valuable information for the court to know in order to determine whether such a policy is unduly burdensome to an obligor, there is no controlling authority requiring such proof before such a request by the obligee can be considered. So long as the obligee demonstrates that the insurance policy is needed in order to provide support after the obligor's death and so long as the insurance is limited to the amount of the outstanding support obligation, such a request should be considered by the court. *See In re Marriage of Mouw*, 561 N.W.2d 100, 102 (Iowa Ct. App. 1997) (modifying the life insurance requirement of the obligor to provide the amount of insurance is limited to the amount necessary to secure the support obligation); *In re Marriage of Weinberger*, 507 N.W.2d 733, 736 (Iowa Ct. App. 1993) (finding it inequitable under the facts of the case to require spousal support payment after the obligor's death and modifying the dissolution decree to eliminate the requirement the obligor pledge his life insurance to a spousal support trust). Nonetheless, I find the equities in this case do not demand that Sheryl be entitled to spousal support after James's death. *See In re Marriage of Mayfield*, 477 N.W.2d 859, 863 (Iowa Ct. App. 1991) (noting that the particular circumstances of each case are to be considered when deciding whether equity requires an obligor to obtain life insurance to secure a support obligation).