## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                    )
                                      )
          Plaintiff,                  )
                                      )        Case No.:    **1910003546**
     v.                               )                     **2001004456**
                                      )                     **2003011951**
WILLIAM SAWYER,                       )
                                      )
          Defendants.                 )


Submitted: May 16, 2026
Decided: May 28, 2026


## OPINION AND ORDER

*On Defendant's Motion for Postconviction Relief*

## DENIED

*On Counsel's Motion to Withdraw*

## GRANTED


*Dominic Carrera, Esquire, Deputy Attorney General*, Attorney General's Office, Wilmington, Delaware, *Attorney for Plaintiff.*

*Kimberly A. Price, Esquire,* Collins, Price, Warner, Woloshin, Wilmington, Delaware, *Attorney for Defendant.*


**Jones, J.**

Having considered Defendant's Motion for Postconviction Relief, it appears to the Court that:

## Sawyer Rule 61 Motion for Postconviction Relief

On May 1, 2025, William Sawyer ("Sawyer") filed the instant Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 ("Rule 61 Motion"). After reviewing the record, Postconviction counsel filed a Motion to Withdraw on April 16, 2026. This is the Court's decision on the matter.

### I. BACKGROUND AND PROCEDURAL HISTORY

Sawyer's conviction and appeals stem from three cases he had against him. The first case originates from an incident on October 5, 2019,[1] when Sawyer's now ex-wife informed Police Sawyer texted her that he was holding the gun she had in the residence.[2] Police executed a search warrant, recovered the gun, and arrested Sawyer the next day on one count of Possession of a Deadly Weapon by a Person Prohibited.[3] On October 11, 2021, a grand jury indicted Sawyer for Possession of a Firearm by a Person Prohibited ("PFBPP").[4] The second case arose from a car chase on January 9, 2020.[5] There, Police responded to a call that Sawyer broke a car window and drove away in a green truck.[6] When police tried to stop his car, Sawyer

---

[1] Postconviction Counsel's Appendix ("Appendix"), at A21.
[2] *Id.* at A23.
[3] *Id.* at A20.
[4] *Id.* at A2, A45.
[5] *Id.* at A9, A28-29.
[6] *Id.* at. A28-29.

fled.[7]  The ensuing chase led to Sawyer being indicted by a grand jury on seven charges: 1) Disregard of a Police Officer's Signal; 2) Unauthorized Use of a Motor Vehicle; 3) Resisting Arrest; 4) Harassment; 5) Reckless Driving; 6) Criminal Mischief; and 7) Criminal Mischief.[8]  The third case occurred two months later on March 26, 2020, when Police were informed that Sawyer was violating a no-contact order from the first case.[9]  When Police arrived and searched Sawyer, they found evidence of drugs both in his pants and where he was seated.[10]  Accordingly, a grand jury indicted Sawyer on charges of Drug Possession (Methamphetamine) and non-compliance with Bond Conditions.[11]

John Edinger ("Trial Counsel") represented Sawyer in all his cases.[12]  Sawyer resolved the second and third case by way of a guilty plea on January 17, 2023.  He pled guilty to Drug Possession (Methamphetamine), Disregarding a Police Officer's Signal and Resisting Arrest.[13]  The recommended sentence under this plea was for all jail time to be suspended for Level 3 Probation,[14] but the parties requested to defer sentencing until after the resolution of the gun charge.[15]  At the plea colloquy, Sawyer advised the court he was satisfied with Trial Counsel's representation.[16]  The

---

[7] *Id.*
[8] Appendix, at A46-48.
[9] *Id.* at A35-36.
[10] *Id.* at A36.
[11] *Id.* at A49-50.
[12] Postconviction Counsel's Motion to Withdraw, at 2.
[13] Appendix, at A65, A60-63.
[14] *Id.* at A65.
[15] *Id.* at A54-55, A62-63.
[16] *Id.* at A60.

first case, encompassing the PFBPP charge, proceeded to a two-day jury trial on May 30, 2023.[17]  On the morning of the first day, Sawyer asked the Court for a continuance so that he could get another attorney.[18]  The trial court denied the request[19] and the jury ultimately found Sawyer guilty of PFBPP.[20]  On April 12, 2024, the court sentenced Mr. Sawyer for all of his cases,[21] which included the five-year minimum mandatory for the PFBPP charge.[22]  The Court suspended any jail time for Level 3 probation on the other three charges.[23]

Sawyer then filed a direct appeal of the conviction to the Delaware Supreme Court arguing the trial court erred in denying his motion for judgement of acquittal.[24]  Nicole Walker ("Appellate Counsel") represented Sawyer during the appeal process.[25]  The Supreme Court summarized the pertinent facts as follows:

> On appeal, Sawyer argues that the Superior Court erred in denying his motion for judgment of acquittal. He contends that the evidence presented by the State was insufficient to support a finding of actual or constructive possession. We disagree and affirm.
>
> (2) On October 5, 2019, New Castle County police arrived at Sawyer's wife's house to investigate a potential crime. Sergeant Michelle Burrus was the lead detective on the investigation. Upon arriving at the house, Sergeant Burrus contacted Detective Ronald Phillips, a crime scene investigator, to help with a search of the house. During the search, Detective Phillips found a 9mm

---

[17] Appendix, at A5-6.
[18] *Id.* at A85.
[19] *Id.* at A85-89.
[20] *Id.* at A6, A279.
[21] *Id.* at A6, A312-328.
[22] *Id.* at A318, A324.
[23] *Id.* at A324-325.
[24] *Id.*; *Sawyer v. State*, 339 A.3d 1227, *1, 2 (Del. 2025).
[25] Postconviction Counsel's Motion to Withdraw, at 5.

Taurus pistol in "the bottom drawer of a[n] [unlocked] metal filing cabinet in the master bedroom of the residence." Detective Phillips collected the firearm from the scene.

(3) The following day, Sergeant Burrus interviewed Sawyer at the New Castle County Police Department. She recorded the interview via video. During the interview, Sergeant Burrus asked Sawyer whether his wife had a firearm, to which Sawyer responded, "I think so." As questioning continued, Sawyer admitted that he knew his wife owned a gun but said that he did not know where she kept it. Sergeant Burrus then asked Sawyer: "Did you ever touch it or anything?" Sawyer responded: "When [my wife] showed it to me the first time"; "when [my wife] first had me move in[to]" the house about "two weeks" ago.

(4) After the interview, Sergeant Burrus ordered processing of the firearm. Detective Phillips swabbed five areas of the firearm for potential DNA evidence—the grip, the slide, the trigger and trigger guard/release area, the magazine release, and the barrel. When later explaining these areas of a firearm to the jury at trial, Detective Phillips testified that the grip is "the most common area a weapon is handled." After Detective Phillips processed the firearm, he collected a DNA sample from Sawyer.

(5) At trial, Lauren Rothwell—a senior forensic DNA analyst for the Delaware Division of Forensic Science—testified that she analyzed the DNA taken from the firearm. Rothwell generated a DNA report of results, comparing Sawyer's DNA sample with the swabs taken from the firearm. The report stated that Sawyer's DNA matched DNA swabs from the "trigger/trigger release" and "grip" areas of the firearm. Regarding these areas of the firearm, the report stated that "[t]he following evidentiary samples each produced a mixed DNA profile consistent with two individuals, at least one of which is male. The DNA profiles of the major contributors to these mixtures match the known DNA profile of William Sawyer." The DNA report was admitted as an exhibit at trial, and Rothwell explained her findings throughout her testimony.

(6) During cross-examination, defense counsel elicited from Rothwell that "secondary" or "indirect" transfer was "possible."

5

Rothwell testified that it was possible that Sawyer's DNA could end up on the firearm through an indirect transfer, meaning that Sawyer did not directly touch the firearm. On redirect, Rothwell testified that it was "possible" because "a number of different scenarios are possible" and that she was not privy to how the DNA made its way onto the firearm.

(7) After the State rested, defense counsel moved for judgment of acquittal. He argued that the DNA evidence could be explained by secondary transfer and that Sawyer's admission to touching the firearm during the interview with Burrus did not establish possession. The State countered that the DNA evidence and Sawyer's admission supported actual and constructive possession, particularly because the firearm was found in an unlocked filing cabinet in the master bedroom. The trial judge denied the motion, finding that the DNA evidence and the admission, among the other circumstantial evidence, were sufficient to allow the jury to consider whether Sawyer had possessed the firearm. The jury subsequently found Sawyer guilty of PFBPP.[26]

The Court ultimately found "[i]n viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Sawyer had actual or constructive possession of the firearm and, therefore, guilty of PFBPP."[27]

Following the Supreme Court's affirmance, Sawyer filed a *pro se* Motion for Postconviction Relief and a Motion for Appointment of Counsel on May 5, 2025.[28] On May 12, 2025, the Court granted the motion for appointment of counsel,[29] and Kimberly Price ("Postconviction Counsel") was appointed as postconviction

---

[26] *Sawyer*, 339 A.3d 1227, *1-2.
[27] *Id.* at *6.
[28] Motion for Postconviction Relief; Appendix, at A7-8.
[29] *Id.* at 8.

counsel.[30]  On this postconviction motion, Sawyer provided four grounds for which relief should be granted: 1) Sawyer "never received any of [his] documents; 2) Sawyer rarely saw his trial lawyer or his appeal lawyer; 3) on the day of the trial Sawyer asked for an extension to obtain new counsel, which the trial court denied; and 4) Trial Counsel did not object when he could have nor did he file the motions Sawyer wanted.[31]  Postconviction Counsel reviewed the record and submitted a Motion to Withdraw.[32]  In that motion, Postconviction Counsel summarized the four grounds as three ineffective assistance of counsel claims and one wrongful denial of a continuance request.[33]  The Court agrees with this characterization and will analyze the issues as such.

## II.  PROCEDURAL BARS UNDER RULE 61(i)

Before the substantive arguments of a Rule 61 Motion can be addressed, the Court must first ensure the Motion passes all procedural bars.[34]  The Court does not need to consider the merits of claims that do not surpass all procedural bars.[35]  There are four procedural bars laid out in Rule 61(i): 1) the one-year time limitation bar; 2) the successive motions bar; 3) the procedural default bar; and 4) the former adjudication bar.[36] Ineffective assistance of counsel claims generally are not

---

[30] Postconviction Counsel's Motion to Withdraw, at 5.
[31] Motion for Postconviction Relief, at 3.
[32] Postconviction Counsel's Motion to Withdraw.
[33] *Id.* at 12.
[34]  *State v. Appiah*, 2023 WL 5608927 (Del. Super. Ct. Aug. 28, 2023) (citing *Younger v. State*, 580 A.2d 552, 554 (Del. 1990)).
[35] *Younger*, 580 A.2d at 552.
[36] Del. Super. Ct. Crim. R. 61(i)(1)-(4); *State v. Peters*, 283 A.3d 668, 680 (Del. Super. Ct. 2022), *aff'd,* 299 A.3d 1 (Del. 2023) ("The Rule 61 procedural bars are 'timeliness, repetitiveness, procedural default, and former

procedurally barred if they were not asserted in proceedings leading to conviction.[37] However, if petitioner cannot sufficiently show counsel's performance amounted to ineffective assistance of counsel, then there is no cause for relief from the procedural bar.[38] When that is the case, petitioner cannot surpass this procedural bar solely on the basis that these claims could not be brought in prior proceedings.[39]

Sawyer has timely filed his first Rule 61 Motion - the Delaware Supreme Court's final order on Sawyer's appeal was dated March 5, 2025, and the Motion was filed May 1, 2025.[40] Accordingly, the first bar does not apply. This is Sawyer's first motion, so the second bar does not apply.[41] Sawyer's claims have not been formerly adjudicated and, thus, the fourth bar does not apply.[42] However, the third bar applies to the claim that the trial court wrongfully denied the continuation request. Because this issue was not raised on Sawyer's direct appeal to the Supreme Court,[43] the claim is barred by the procedural default bar.[44]

### III. *STRICKLAND* STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

---

adjudication.'"); *State v. Guess*, 2014 WL 3510017, at *2, n. 8 (Del. Super. Ct. July 15, 2014), *aff'd*, 105 A.3d 989 (Del. 2014).

[37] *Green v. State*, 238 A.3d 160, 175 (Del. 2020); *State v. Bartell*, 2023 WL 7905368 (Del. Super Ct. Nov. 16, 2023); *see McGriff v. State*, 2024 WL 3770733, at *2 (Del. August 12, 2024) ("[t]he procedural bars of Rule 61 do not bar a timely claim of ineffective assistance of counsel."); *see* Super. Ct. Crim. R. 61(i)(3).

[38] *Shelton v. State*, 744 A.2d 465, 475 (Del. 2000).

[39] *Id.*

[40] *Sawyer*, 339 A.3d 1227; *see* Del. Super. Ct. Crim. R. 61(i)(1)-(2).

[41] *See* Del. Super. Ct. Crim. R. 61(i)(2).

[42] *See* Del. Super. Ct. Crim. R. 61(i)(4).

[43] *Sawyer*, 339 A.3d 1227.

[44] *See* Del. Super. Ct. Crim. R. 61(i)(3).

In *Strickland v. Washington*, the United States Supreme Court established the standard for an ineffective assistance of counsel claim brought by a criminal defendant.[45] The standard is a two-prong test requiring both prongs be met before a judgment is set aside.[46] The *Strickland* Court emphasizes the importance of the reviewing court's responsibility to make an ineffective assistance determination without "the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[47]

The first prong, or the performance prong, asks whether counsel's representation was deficient in failing to meet an objective standard of reasonableness.[48] This is a stringent burden for the movant to overcome because there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."[49] The objective standard utilized in this prong considers "prevailing professional norms" in determining the reasonableness of counsel's actions.[50]

The second prong, or the prejudice prong, determines whether deficiencies in counsel's representation caused the defendant substantial prejudice.[51] Under this prong, the defendant must show "there is a reasonable probability that, but for

---

[45] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[46] *Id.* at 689.
[47] *Id.*
[48] *Id.*
[49] *Id.* at 689.
[50] *Neal v. State*, 80 A.3d 935, 941 (citing *Strickland*, 466 U.S. at 689).
[51] *Strickland*, 466 U.S. at 687.

counsel's unprofessional errors, the result of the proceeding would have been different."[52] The potential of a different outcome "must be substantial, not just conceivable."[53] A reasonable probability is a probability "sufficient to undermine confidence in the outcome" of the proceeding.[54]

The movant must prove both prongs – deficient attorney performance and resulting prejudice – to make a proper ineffective assistance of counsel claim.[55] Therefore, "failure in the first instance to prove either will doom [the movant's] claim, and the Court need not address the other."[56]

## IV. ANALYSIS

Turning first to the ineffective assistance of counsel claims, the court will address each argument in turn.

### i. Ineffective Assistance of Counsel Claims

Sawyer's first ineffective assistance of counsel claim is based on the assertion that he did not receive "any of [his] documents" like discovery before trial.[57] The issues with this claim are twofold: 1) Sawyer provides no support for how Trial Counsel's actions were unreasonable; and 2) Sawyer fails to explain how he was prejudiced.

---

[52] *Id.* at 694.
[53] *Neal*, 80 A.3d at 942 (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).
[54] *Id.*
[55] *State v. Thomas*, 2024 WL 5117117, at *6 (Del. Super. Dec. 16, 2024).
[56] *Id.* at *7 (citing *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").
[57] Motion for Postconviction relief, at 3.

For his second and third case, Sawyer entered a plea deal with the state and waived his right to argue discovery deficiencies. At the plea colloquy, the State noted Sawyer had a chance to review discovery, [58] and at no point in the proceeding did Sawyer challenge or deny this assertion.[59] Next, at the time his first case was pending, Delaware Superior Court Criminal Rule 16 ("Rule 16") did not permit defendants to receive police or investigative reports through discovery.[60] Sawyer's trial began May 30, 2023, and the updated Rule 16 did not go into effect until September 1, 2023. Therefore, Trial Counsel had no duty to turn over these reports to Sawyer. Furthermore, Trial Counsel's activity log demonstrates that counsel showed Sawyer his statement.[61] Under these facts, it cannot be argued that Trial Counsel's actions were unreasonable, and the first *Strickland* prong is not met. Even if Trial Counsel's actions were deficient in providing Sawyer with his discovery, Sawyer has not met the second *Strickland* prong establishing prejudice as a result of the alleged deficiencies. Accordingly, the first claim has no merit.

Sawyer's second ineffective assistance of counsel claim surrounds a lack of meetings with Trial Counsel and Appellate Counsel. Sawyer maintains he only saw Trial Counsel "once or twice before trial," and he only met with Appellate Counsel "one time."[62] Trial Counsel's case activity log includes multiple meetings with

---

[58] Appendix at A72.
[59] *Id.* at A71-76.
[60] Del. Super. Ct. Crim. R. 16 (effective to August 31, 2023).
[61] Appendix at A425.
[62] Motion for Postconviction relief, at 3.

Sawyer via videophone, including a meeting to "discuss[] [the] upcoming trial."[63] As to Appellate Counsel, the requirements of effective counsel are inherently different. A defendant's appellate counsel has no trial to prepare for – their role centers on reviewing the record. This does not require Appellate Counsel to have multiple meetings with Sawyer. Therefore, the Court finds this contention alone is insufficient to bring a claim that either counsel acted deficiently. Again, Sawyer fails to provide any prejudice caused by the alleged deficiency. As such, this second claim fails.

The last ineffective assistance of counsel claim stems from Sawyer's contention that Trial Counsel should have objected at trial and submitted motions that he did not submit.[64] However, Sawyer has provided no further information as to what motions should have been submitted and what objections should have been made. Postconviction Counsel's review of the record failed to identify any such motion that should have been filed or any further objections that Trial Counsel should have made during trial.[65] The evidence in the case largely consisted of police evidence, a DNA report, and the firearm at issue. Postconviction Counsel indicated that there was no basis for Trial Counsel to object to the firearm and DNA evidence.[66] As "conclusory statements" of ineffectiveness are insufficient to

---

[63] Appendix at A425-427.
[64] Motion for Postconviction relief, at 3.
[65] Postconviction Counsel's Motion to Withdaw, at 15.
[66] *Id.*

establish the *Strickland* prongs,[67] this third claim of ineffective assistance of counsel also fails.

ii. *Denial of Continuance Request*

The final claim in Sawyer's Rule 61 Motion relates to the trial court's denial of his continuance request the morning of the first day of trial. To begin, this claim is procedurally barred, as discussed *supra*, because Sawyer did not raise the issue on his direct appeal to the Supreme Court.[68] However, even if this claim was not procedurally barred, the claim also fails to establish prejudice. "Delaware trial courts have inherent power to control their dockets."[69] "Requests for continuances 'are left to the discretion of a trial judge whose ruling will not be disturbed on appeal unless that ruling is clearly unreasonable or capricious.'"[70] For Sawyer to show that he was prejudiced by the trial court's denial, he must establish to a reasonable probability that had his continuance request been granted and he was represented by another attorney, the outcome of the trial would have been different.

The Court simply cannot come to that conclusion in this case. The evidence against Sawyer was overwhelming; there was DNA evidence linking him to the gun and Sawyer stated that he was holding the weapon. Therefore, this Court cannot conclude that the outcome of the case would have been different had Sawyer been

---

[67] See *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).
[68] *Sawyer*, 339 A.3d 1227.
[69] *Solow v. Aspect Res., LLC*, 46 A.3d 1074, 1075 (Del. 2012), as corrected (Mar. 19, 2012) (citing *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1107 (Del. 2006)).
[70] *Secrest v. State*, 679 A.2d 58, 64 (Del. 1996) (quoting *Bailey v. State*, 521 A.2d 1069, 1088 (Del. 1987)).

represented by a different attorney. Accordingly, Sawyer cannot establish prejudice, and the claim does not pass muster.

## V. CONCLUSION

For the above stated reasons, all of Sawyer's claim in his Rule 61 Motion fail. As a result, the Court hereby **DENIES** Defendant's Motion for Postconviction Relief, and **GRANTS** Postconviction Counsel's Motion to Withdraw.

**IT IS SO ORDERED**.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge


cc: Original to Prothonotary
William Sawyer, SBI 00462801, HRYCI