STATE of Iowa, Appellant,

v.

Aaron Matthew PICKETT, Appellee.

No. 02–1960.

Supreme Court of Iowa.

Nov. 13, 2003.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, J. Patrick White, County Attorney, and Michael Brennan, Assistant County Attorney, for appellant.

Richard Klausner, Johnson County Public Defender, Iowa City, for appellee.

TERNUS, Justice.

When the defendant, Aaron Pickett, was placed on probation after pleading guilty to first-offense operating while intoxicated, the court ordered Pickett to pay a probation enrollment fee of $250. Although Pickett paid the fee, he failed to satisfy the conditions of his probation. The court then revoked Pickett's probation and ordered the district department of correctional services to refund the $250 fee he had paid. We granted the State's request for discretionary review of this order. Upon our consideration of the arguments of the parties, we conclude the trial court had no authority to order a refund. Accordingly, we reverse.

## I. *Governing Statutes.*

Because this case primarily presents an issue of statutory construction, it is helpful to begin our discussion with a brief review of the statute at issue and its related provisions. Iowa Code section 905.14 (2001) imposes an enrollment fee on defendants placed on probation. This statute states:

1. A person placed on probation or parole *and subject to supervision by a district department* shall be required to pay an enrollment fee of two hundred fifty dollars to the district department to offset the costs of supervision.

2. *The fees established pursuant to this section shall not be waived by the sentencing court.* Each district department shall retain fees collected for administrative and program services.

3. The department of corrections may adopt rules for the administration of this section. If adopted, the rules shall include a provision for *waiving the collection of fees for persons determined to be unable to pay.*

Iowa Code § 905.14 (emphasis added). "[D]istrict department" is defined as "a judicial district department of correctional services." *Id.* § 905.1(5). The district departments are intended to "furnish or contract for those services necessary to provide a community-based correctional program" to meet the needs of that judicial district. *Id.* § 905.2.

Pursuant to the rule-making authority granted in section 905.14, the department of corrections has adopted the following administrative rules:

42.1(13) The district department shall have written policies and procedures governing the preparation, submission, review, modification, collection and retention of supervision enrollment fees, in accordance with Iowa Code chapter 905.14. Payments shall be made directly to the supervising judicial district department.

42.1(14) The district department shall have written policies and procedures governing the waiver of collection of supervision fees for persons determined to be unable to pay, in accordance with Iowa Code chapter 905.14.

Iowa Admin. Code rs. 201—42.1(13)-(14) (1997). The record before us does not contain the specific policies and procedures adopted pursuant to these rules by the district department involved in this case.

With this statutory framework in mind, we review the events leading to the present appeal.

## II. *Background Facts and Proceedings.*

On February 19, 2002, Pickett pled guilty to operating while intoxicated, first offense. *See* Iowa Code § 321J.2. The court granted the defendant a deferred judgment and placed him on "unsupervised probation under the Department of Corrections" for one year. Several conditions were imposed on his probation and he was ordered to pay "an administrative probation supervision fee in the sum of $250.00."

The sixth judicial district department of correctional services (DCS) checked on Pickett's compliance with the court's order on September 13, 2002, and concluded he had not completed the conditions of his probation. Thereafter, DCS wrote to Pickett, referencing his "self-supervised probation" and informing him that he had not complied with the court's order in several particulars, including payment of the administrative fee. The DCS also informed Pickett that he had a scheduled appointment on November 1, 2002, and should be prepared at that time to document that he had completed his probation requirements.

Pickett failed to respond to this letter and a second compliance check by DCS on November 4, 2002, revealed that he had failed to fulfill his obligations under the court's order. The county attorney then filed a request asking that Pickett's probation be revoked due to his noncompliance. Hearing was set for November 26, 2002.

Pickett appeared at the scheduled hearing and acknowledged that he had not completed the conditions of his probation. He did, however, inform the court that he had mailed the $250 enrollment fee the previous day. The court concluded the defendant's probation should be revoked, as well as his deferred judgment. The court then stated its intention to order DCS to refund the fee. Pickett's guilty plea was accepted on the record and the court imposed sentence. A later judgment entry prepared by the court ordered DCS to refund the supervision fee paid by the defendant.

DCS subsequently wrote to the court, informing the court that Iowa Code section 905.14, which provides for payment of a probation enrollment fee, does not permit the sentencing court to waive the fee. DCS told the court that its policy is not to return the fee should the defendant's probation be revoked. The court responded by email, stating that it was not the court's intention to order refunds of "all probation supervision fees when a self-supervised probation is revoked," and that the court did so here "based upon the unique facts in this case." In view of DCS's letter, the court entered a second order specifically addressing the probation supervision fee issue in an effort to clarify its initial order. The court stated in its second order that DCS's position was contrary to the court's prior order, and again ordered DCS to refund Pickett's fee.

This court granted the State's request for discretionary review. The primary issue before our court is whether a district court has authority to order the DCS to refund the $250 fee mandated by section 905.14 when the defendant's probation is subsequently revoked. Before addressing the merits of this issue, however, we first discuss the defendant's claim that the

State did not preserve error on the court's refund order.

### III. *Error Preservation.*

■ Pickett claims the State did not preserve error because it failed to object when the court announced at the probation revocation hearing that it intended to order DCS to refund the enrollment fee. It is true that the only formal record made on this issue was a statement by the DCS representative, Allyson Clark, that "we have to have written consent to turn it over." Later, when DCS informed the court that it would not refund the fee because the law prevented the sentencing court from waiving the fee, the court stated in its email to DCS:

> [DCS's] position regarding a refund of the probation supervision fee was clearly stated in court by Allyson Clark. I considered that position and determined that the fee should be refunded. No further discussion is necessary.

We think this record supports a conclusion that error was preserved when considered in light of the purposes of our error preservation rules.

■ Error preservation is important for two reasons: (1) affording the district court an " 'opportunity to avoid or correct error' "; and (2) providing the appellate court " 'with an adequate record in reviewing errors purportedly committed' " by the district court. *DeVoss v. State,* 648 N.W.2d 56, 60 (Iowa 2002) (citation omitted). These principles of error preservation are based on fairness: .

> "[I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. Furthermore, it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error

on appeal if the outcome in the trial court is unfavorable."

*Id.* (citation omitted). The record made in the district court shows that the purposes of error preservation were accomplished here and there is no unfairness in allowing the State to argue on appeal that the court could not order a refund of the probation supervision fee.

Although the objection made by the DCS representative at the probation revocation hearing was rather cryptic, her statement that "written consent" was needed alerted the court to DCS's position that the court could not unilaterally order a refund. Even though the DCS representative did not indicate whose "consent" was thought necessary in order to refund the enrollment fee, based on the governing statutes and rules, it is apparent that the consent required was that of DCS. *See* Iowa Code § 905.14(3) (allowing the department of corrections to adopt rules for waiving collection of the fee); Iowa Admin. Code r. 201—42.1(14) (providing for district department to adopt policies for waiver of collection). Moreover, it can hardly be argued that the trial court did not understand DCS's position at the hearing in view of the court's later statement that it had considered this position in making its ruling.

In summary, then, we conclude the trial court was sufficiently alerted to the objection being raised on appeal so as to allow the court "to avoid or correct error." *See DeVoss,* 648 N.W.2d at 60. In addition, DCS made an adequate record for purposes of our review. Therefore, we will proceed to the merits of the claimed error.

### IV. *Can the Sentencing Court Order a Refund of the Section 905.14 Fee?*

■ A. *General principles of statutory interpretation.* Because the issue be-

fore us involves the interpretation of a statute, we briefly review the pertinent rules of statutory construction.

When we interpret a statute, we attempt to give effect to the general assembly's intent in enacting the law. Generally, this intent is gleaned from the language of the statute. To ascertain the meaning of the statutory language, we consider the context of the provision at issue and strive to interpret it in a manner consistent with the statute as an integrated whole.

*Griffin Pipe Prods. Co. v. Guarino,* 663 N.W.2d 862, 865 (Iowa 2003) (citations omitted). Similarly, we interpret a statute consistently with other statutes concerning the same or a related subject. *State v. Iowa Dist. Ct.,* 616 N.W.2d 575, 581 (Iowa 2000). Finally, statutes are interpreted in a manner to avoid absurd results, *see Albrecht v. Gen. Motors Corp.,* 648 N.W.2d 87, 89 (Iowa 2002), and to avoid rendering any part of the enactment superfluous, *see Am. Legion v. Cedar Rapids Bd. of Review,* 646 N.W.2d 433, 439 (Iowa 2002). Our review of the district court's interpretation of a statute is for correction of errors of law. *See State Pub. Defender v. Iowa Dist. Ct.,* 663 N.W.2d 413, 415 (Iowa 2003).

With these principles in mind, we turn to an analysis of the statute.

■ **B.** *Applicability of section 905.14.* Before we address whether a trial court can order a refund of a probation enrollment fee, we consider the defendant's claim that the trial court was not required by section 905.14(1) to assess the enrollment fee in his case. Pickett contends that because the fee was not mandatory in his case, any restrictions on the court's authority under section 905.14 do not apply. He asserts the enrollment fee was not obligatory here because his probation was not "subject to supervision by a dis-

trict department of correctional services." *See* Iowa Code § 905.14(1). He relies on the court's order placing him on *"unsupervised* probation under the Department of Corrections," and DCS's reference to his probation as *"self-*supervised." (Emphases added.) In reviewing the reality of Pickett's probation, however, we conclude that Pickett was, in fact, subject to the supervision of the sixth judicial district department of correctional services, albeit at a minimal level.

Iowa Code section 901B.1 sets forth a corrections continuum that consists of five levels: (1) noncommunity-based corrections sanctions; (2) probation and parole options; (3) quasi-incarceration sanctions; (4) short-term incarceration (less than thirty days); and (5) incarceration in excess of thirty days. *Id.* § 901B.1(1). The probation and parole options consist of the following:

(1) Monitored sanctions. Monitored sanctions are *administrative supervision* sanctions which are *monitored for compliance by the district department of correctional services* and include, but are not limited to, low-risk offender-diversion programs.

(2) Supervised sanctions. Supervised sanctions are regular probation or parole supervision and any conditions established in the probation or parole agreement or by court order.

(3) Intensive supervision sanctions. Intensive supervision sanctions provide levels of supervision above sanctions in subparagraph (2) but are less restrictive than sanctions under paragraph *"c"* [quasi-incarceration sanctions] and include electronic monitoring, day reporting, day programming, live-out programs for persons on work release or who have violated chapter 321J, and institutional work release under section 904.910.

*Id.* § 901B.1(1)(*b*) (emphasis added). Notwithstanding characterizations of the defendant's probation as "unsupervised" or "self-supervised," we think it falls within the level two, sublevel one category of "monitored sanctions," which are *"administrative supervision* sanctions." *Id.* § 901B.1(1)(*b*)(1) (emphasis added). *See generally id.* § 901B.1(3) (requiring DCS to develop "[a]n intermediate criminal sanctions program [that] shall consist of *only* levels two, three, and sublevels one and three of level four of the corrections continuum" (emphasis added)). Significantly, the court's order expressly states that the defendant's probation was "under the Department of Corrections." Moreover, the DCS did, in fact, provide administrative supervision of the defendant's probation, checking for compliance and notifying the court when compliance was not forthcoming. We conclude, therefore, that the defendant's probation was "subject to supervision by a district department" within the contemplation of section 905.14(1).

▮ C. *Authority of district court to order refund.* Having rejected the defendant's argument that section 905.14(1) did not require imposition of the probation supervision fee, we next consider whether the court, having imposed the fee, can order that it be refunded upon revocation of the defendant's probation. We observe initially that when the statute is viewed in its entirety, it seems apparent that the legislature intended all defendants put on probation subject to DCS supervision to pay an enrollment fee unless DCS decided to waive collection of the fee. We agree with the State that the district court's interpretation of the statute is inconsistent with this overall statutory scheme.

First, we think that ordering a refund is no different than waiving the fee. Whether it is called a refund or a waiver, the result is the same: a defendant placed on probation is relieved of the obligation to pay an enrollment fee. Thus, permitting the sentencing court to order a refund would substantially weaken the mandatory nature of the fee and the prohibition against waiving the fee.

More importantly, granting this power to the court is inconsistent with the authority given by the legislature to the department of corrections—not the court—to adopt rules providing for waiving collection of the fee "for persons determined to be unable to pay." *Id.* § 905.14(3). By ordering a refund here, the district court was in effect requiring DCS to waive collection of the previously imposed enrollment fee. But under the statute, that decision rests with DCS. Here, DCS has a policy, as stated in its letter to the district court, not to refund the statutory fee. This policy makes sense given the legislature's directive to the department to adopt rules permitting waiver of collection when the defendant is unable to pay. *See id.* Clearly, a defendant who has already paid the fee would not fall within this category of defendants.

In ordering the refund, the district court appeared to place some importance on the fact the State had requested the court to revoke Pickett's probation, stating to the DCS representative that "[y]ou can't ... have your cake and eat it too." Contrary to the implication of the court's comment, we find nothing inconsistent in the State's request for probation revocation and its insistence on collection of the enrollment fee. Regardless of whether a defendant successfully completes probation, DCS is required to exert efforts to supervise, with varying levels of intensity, the defendant's efforts. *See generally State v. Oliver,* 588 N.W.2d 412, 416 (Iowa 1998) (holding purpose of enrollment fee is " 'to offset costs of supervision,' " not to punish the defendant (quoting Iowa Code section

905.14(1))). Therefore, there is no absurdity in interpreting the statute to prohibit a refund of the fee to unsuccessful defendants. Consequently, DCS's position rests on a proper interpretation of the law.

## V. *Conclusion and Disposition.*

We hold the trial court erred in ordering DCS to refund a probation enrollment fee imposed under section 905.14(1). It simply had no authority to do so. We reverse that portion of the court's sentencing order and remand for entry of an order consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except WIGGINS, J., who takes no part.