**IN THE COURT OF APPEALS OF IOWA**

No. 15-1822
Filed January 13, 2016

**IN THE INTEREST OF K.S.,**
**Minor Child,**

**D.A., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Mark Fowler, District

Associate Judge.

        A father appeals from the order terminating his parental rights.

**AFFIRMED.**

        Timothy Tupper, Davenport, for appellant father.

        Thomas J. Miller, Attorney General, and Kathrine Miller-Todd, Assistant

Attorney General, for appellee State.

        Martha L. Cox, Bettendorf, attorney and guardian ad litem for minor child.

        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

The father appeals from the juvenile court order terminating his parental rights to his child, K.S.[1]  The father maintains the State failed to make reasonable efforts for reunification and did not prove by clear and convincing evidence that the statutory grounds for termination have been met pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2015).  He also maintains his due process rights were violated.

Because the father raises the State's failure to make reasonable efforts and violation of his due process rights for the first time on appeal, these issues are not preserved for our review, and we decline to consider them.  Because K.S. could not be returned to her father's care at the time of the termination hearing, termination of the father's parental rights is in K.S.'s best interests, and no permissive factor weighs against termination, we affirm.

**I. Background Facts and Proceedings.**

K.S. was born on October 12, 2014.  She tested positive for THC at birth, and the mother admitted she had used marijuana almost every day prior to K.S.'s birth.  The father visited K.S. and the mother in the hospital.  The mother identified the father by his first name to the Iowa Department of Human Services (DHS), but she did not provide his last name.

When K.S. was discharged from the hospital on October 14, 2014, she was placed with the mother's maternal aunt and uncle.

K.S. was adjudicated a child in need of assistance (CINA) on January 28, 2015.  At the same time, the court ordered the father to take a paternity test.

---

[1] The mother's parental rights were also terminated.  She does not appeal.

The father took the paternity test in mid-February and was confirmed to be the biological father on March 3, 2015. The results were not filed with the juvenile court until April 8, 2015, but the father was served with the CINA petition on March 26, 2015, and also began receiving weekly visits with K.S. in March 2015.

In the DHS's April 8, 2015 report to the court, the caseworker stated that the father denied having any issues with substance abuse, although he admitted to "occasional marijuana use." The father had a lengthy history of criminal charges including three charges of drug possession, three charges of public intoxication, and a charge for driving while intoxicated. The father arrived for his first scheduled visit with K.S. smelling of marijuana. Additionally, he missed his first scheduled drug test on April 2, 2015. The caseworker also expressed concern that the father had anger issues, noting he had criminal charges of: assault with use or display of a weapon, disorderly conduct, interference with an official act, harassing a public official, and two charges of resisting a peace officer. The mother and father each expressed on their social media accounts in February 2015 that they were engaged to be married. After DHS questioned the father about his ability to keep K.S. safe from the mother, he indicated that their relationship had ended.

The importance of immediately engaging in services was stressed to the father, especially as K.S. had been out of the parents' care approximately five months when he was confirmed as the father. However, the father initially failed to engage in parenting education, drug testing, and a home inspection.

The father participated in the permanency hearing on April 16, 2015. At the hearing, he requested additional time to participate in services, stating he had not wanted to get involved until he was sure K.S. was his biological child.

The father was ordered to complete a drug evaluation. He showed up for an initial meeting on June 11, 2015, but failed to show for the evaluation and UA the following day. He returned for an evaluation on July 13, 2015. He was recommended to outpatient drug rehabilitation treatment, although it was noted that his self-reporting about his alcohol and drug use was very different from his initial comments at the June 11, 2015 meeting. The father did not begin treatment. The father obtained another evaluation on August 18, 2015. He was diagnosed with mild alcohol use disorder and mild cannabis use disorder and was recommended intensive outpatient treatment. The father began treatment following the evaluation, but he was unsuccessfully discharged August 24, 2015, with a recommendation to participate in anger management and therapy before reentering treatment. The social worker was informed that the father was "disrespectful and disruptive to peers" and had been discharged "due to his inappropriate language, behaviors, and anger issues." Additionally, the father had stated he did not believe he had any issues to address.

Visits between the father and K.S. were suspended from June 11 to August 7, 2015. The visits were not going well because K.S. was frequently frightened and inconsolable in the father's care. During such times, the father was frustrated and tense, which added to K.S.'s distress. The father was notified that visits would resume when he began complying with the service recommendations.

The termination hearing was held on September 23, 2015. At the time of the hearing, the father had recently begun engaging in therapy and was taking prescribed medications. At the hearing, the father adamantly denied having any type of substance abuse problem. He testified that he had turned his life around in the six months leading up to the hearing and that his therapist had been a great help to him. The father never completed an anger management course.

The care coordinator testified at the hearing as well. She testified that the weekly half hour visits between K.S. and her father were being held in the father's home until September 11, 2015—approximately two weeks before the hearing. The visits were held in his home on the condition that he would remain calm. Following the September 11 visit, he became hostile with her and because she felt like it was a safety issue, visits were moved to the Families First office.

On October 15, 2015, the juvenile court terminated the father's parental rights to K.S. pursuant to Iowa Code sections 232.116(1)(h) and (*l*). The father appeals.

**II. Standard of Review.**

We conduct a de novo review of termination of parental rights proceedings. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). Although we are not bound by the juvenile court's findings of fact, we do give them weight, especially in assessing the credibility of witnesses. *Id.* An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is considered "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.*

**III. Discussion.**

**A. Error Preservation.**

On appeal, the father maintains the State failed to make reasonable efforts to reunify him with K.S. In support of this contention, the father relies on the fact that the proceedings had been in progress for approximately five months before the father's paternity was established and that DHS disallowed visits between the father and K.S. for a period of approximately two months. The father also complains that his request to DHS for additional visitation was not granted once the visits resumed. However, the juvenile court repeatedly found that reasonable efforts were being made, and the father never raised his complaint with the juvenile court. *See In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa 1994) ("While the state had the obligation to make the efforts, the parents have a responsibility to demand services prior to the termination hearing. Challenges to the plan for reunification should have when the plan was entered."). "[V]oicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). Additionally, "we will not review a reasonable efforts claim unless it is raised prior to the termination hearing." *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015).

The father also maintains that he and K.S. did not receive the protections due process affords them under the Fifth and Fourteenth Amendments to the Constitution. The father maintains this matter was preserved for our review "by filing timely notice of appeal." "While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation."

Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006) (footnote omitted) (explaining that "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court"). The purpose behind our error preservation rules is to ensure the juvenile court had an opportunity to avoid or correct errors and to provide the appellate court with an adequate record to review any purported errors. *State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003). The father's timely notice of appeal, without more, is not sufficient to preserve this alleged error for our review. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) (holding the parents' due process challenge was not preserved for review because they did not object at the permanency hearing and "[e]ven issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal").

We decline to consider the father's claims that the State failed to make reasonable efforts to reunify him with K.S. and that he and K.S. were denied due process.

**B. Statutory Grounds.**

The father maintains the State did not prove the statutory grounds for termination have been met by clear and convincing evidence. The juvenile court terminated the father's rights pursuant to Iowa Code section 232.116(1)(h) and (*l*). When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707.

The juvenile court may terminate a parent's parental rights pursuant to Iowa Code section 232.116(1)(h) when the child is three years old or younger, has been adjudicated a child in need of assistance, has been removed from the parent's custody for at least six of the last twelve months, and the child cannot be returned to the parent's custody at the time of the termination hearing. Here, the father only challenges the juvenile court's finding that K.S. could not be returned to his care at the time of the hearing.

At the time of the termination hearing, the father had not completed substance abuse treatment and denied needing it. He also had not completed an anger management course, although he maintained he was dealing with his anger issues by talking to his therapist. Additionally, the father also has multiple alcohol and drug related criminal convictions.

As we have noted, the father's visits with the child have been difficult on the child's emotional well-being. Due to hostility the father had showed to the care coordinator, the visits had recently been moved from the father's home. Although the visits between K.S. and the father were more successful after they resumed in August 2015, they were only half an hour once a week. The social worker opined that K.S. was not bonded to the father. Additionally, although the father denied he had an ongoing relationship with the mother, the pair had been seen together in the community multiple times in the months leading up to the termination hearing.

We believe the State proved by clear and convincing evidence that K.S. could not returned to the father's care at the time of the termination hearing. There was no nurturing, bonded relationship between the father and child, and

the father's efforts to comply with services were less than successful. We conclude termination of the father's parental rights was in K.S.'s best interests, and no permissive factor weighs against termination.

**IV. Conclusion.**

Because the father raises the alleged errors of the State's failure to make reasonable efforts and violation of his due process rights for the first time on appeal, these issues are not preserved for our review, and we decline to consider them. Because K.S. could not be returned to her father's care at the time of the termination hearing, termination of the father's parental rights is in K.S.'s best interests, and no permissive factor weighs against termination, we affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**