# IN THE COURT OF APPEALS OF IOWA

No. 15-0358
Filed March 9, 2016

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**BRIAN THOMAS WOODS,**
          Defendant-Appellant.
_____

          Appeal from the Iowa District Court for Dubuque County, Robert J.

Richter, District Associate Judge.


          A defendant appeals from his conviction and sentence for driving while his

license was revoked, carrying weapons, and operating while intoxicated.

**AFFIRMED.**


          Scott J. Nelson, Dubuque, for appellant.

          Thomas J. Miller, Attorney General, and Kevin Cmelik and Mary A. Triick,

Assistant Attorneys General, for appellee State.


          Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

Brian Woods appeals from his convictions and sentences for driving while his license was revoked, carrying weapons, and operating while intoxicated. He maintains he received ineffective assistance from trial counsel.[1]

**I. Background Facts and Proceedings.**

At approximately 1 a.m. on July 11, 2014, Officer Walker was on routine patrol in his squad car when he noticed a car parked at an ATM. The headlights were not on, and the driver's door was ajar. Walker was unable to see anyone in the vehicle, so he circled around the block. As he neared the vehicle a second time, he saw a person hunched in the driver's seat. Walker checked the registration of the vehicle and learned the owner of the vehicle had a revoked license.[2] Because the car was parked too near the ATM to access the driver's window, Walker approached the front passenger window. Woods told Walker he was waiting for the driver to return to the car. Walker smelled an odor of alcohol coming from the vehicle and asked Woods if he had been drinking. Woods admitted having one beer the previous evening. After checking Woods's identification, Walker learned Woods's license to operate a vehicle had been revoked.

---

[1] Woods also argues the trial court erred in allowing the use of the shock belt without a showing of necessity by the State. This issue was not raised in the trial court, and as such, it is not preserved for our review. *See State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003) ("It is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never give the opportunity to consider."); *see also State v. McCright*, 569 N.W.2d 605, 605 (Iowa 1997) (emphasizing the importance of raising "objections at the earliest possible time" in order to give the district court the opportunity to "take any necessary corrective action at a time when correction is still possible"). We consider the claim only through the lens of ineffective assistance of counsel. *See State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006) (stating claims of ineffective assistance are an exception to normal error-preservation rules).

[2] Woods was not the owner of the vehicle.

Woods was ultimately charged with driving while his license was revoked, carrying weapons, and operating while intoxicated. The matter proceeded to jury trial on October 6–8, 2014.

At the beginning of the trial, Woods indicated to the court that he wanted to subpoena a witness Woods maintained was actually driving the car and his trial counsel had not done so. A record of the issue was made, and the court proceeded with other matters. The witness was not subpoenaed.

Woods was ultimately found guilty of each of the three charges.

With the assistance of new counsel, Woods filed a motion for new trial asserting, among other things, that he had not received a fair trial because he was forced to wear an electrical control device around his midsection. At the hearing on the motion, Woods indicated the device was not visible to the jury, and his trial attorney had not been aware he was wearing it until Woods mentioned it at some point midtrial. Woods stated he was anxious while wearing it for fear that it could either accidently go off or that the officer in the courtroom would initiate it if he did anything other than sit quietly. Woods maintained the shock belt had affected his ability to actively participate in his defense.

The district court denied Woods's motion for new trial and noted that "the defendant did not raise an objection to the use of the belt. The court did not have an opportunity to hear arguments prior to trial as to whether or not the use of the belt in this case would have been appropriate."

Woods appeals.

**II. Standard of Review.**

A defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). If we determine the record is adequate, we may decide the claim. *Id.* We review claims for ineffective assistance of counsel de novo. *Id.* This is our standard because such claims have their basis in the Sixth Amendment to the United States Constitution. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

**III. Discussion.**

Woods maintains trial counsel was ineffective for failing to subpoena a witness and for failing to object to the placement of an electronic control device around Woods's waist throughout his trial.

To prevail on a claim of ineffective assistance of counsel, Woods must prove by a preponderance of the evidence (1) his attorney failed to perform an essential duty and (2) prejudice resulted from the failure. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). We measure counsel's performance against an objective standard of reasonableness under prevailing professional norms. *Clay*, 824 N.W.2d at 495. There is a presumption counsel performed his or her duties competently. *Id.* Prejudice exists where the defendant proves by a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 496. Under Iowa law, we look to the cumulative effect of counsel's errors when determining whether the defendant satisfied the prejudice prong. *Id.* at 500. We prefer to preserve ineffective-assistance claims for development of the

record and to allow trial counsel to defend against the charge. *See State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006).

Here, as the State acknowledges, the record is inadequate to address Woods's claims. Although he maintains the witness he wanted to subpoena would have exonerated him with her testimony, we have no record as to what the witness's testimony would have been. *See Nichol v. State*, 309 N.W.2d 468, 470 (Iowa 1981) ("Ordinarily complaints about failure to call witnesses should be accompanied by a showing their testimony would have been beneficial."). We will not rely on Woods's speculation. Additionally, from the record before us, it is unclear when counsel learned about the use of the electronic control device and whether counsel made a strategic decision not to object to the device, which was not visible to the jurors. *See Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) ("[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." (alteration in original)). We preserve Woods's claims for possible postconviction-relief proceedings. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) ("If . . . the court determines the claim cannot be addressed on appeal, the court must preserve it for a postconviction-relief proceeding, regardless of the court's view of the potential viability of the claim."). We affirm.

**AFFIRMED.**