**IN THE COURT OF APPEALS OF IOWA**

No. 17-0009
Filed April 5, 2017

**IN THE INTEREST OF M.C.,**
**Minor Child,**

**M.J., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.


        A father appeals from the juvenile court's order terminating his parental rights to his child. **AFFIRMED.**


        Timothy J. Tupper of Tupper Law Firm, Davenport, for appellant father.

        Thomas J. Miller, Attorney General, and Gretchen W. Kraemer and Janet L. Hoffman (until withdrawal), Assistant Attorneys General, for appellee State.

        Charles F. Elles, Bettendorf, attorney and guardian ad litem for minor child.


        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, Presiding Judge.**

A father appeals the juvenile court's order terminating his parental rights to his child, M.C., born in 2015.  He argues the State did not make reasonable efforts to reunify him with his child because it failed to provide visitation or services and failed to timely investigate appropriate relative placements.  He also claims his constitutional due process rights were violated because of the State's alleged failure to make reasonable efforts.

In September 2015, M.C. was only a few months old when her mother voluntarily placed her and the mother's older child, C.R., with Safe Families for Children[1] because she was homeless and suffering from mental illness.  The mother was unable to resume care of her children, and the Iowa Department of Human Services (DHS) assumed their custody because the father was incarcerated pending a probation revocation hearing.[2]  In January 2016, M.C. was placed in family foster care while C.R. remained with her host family, who later obtained a foster care license to continue caring for her.

In April 2016, the juvenile court adjudicated both children CINA.  M.C.'s father remained in prison throughout her CINA case.  In October, the court held a combined permanency and termination hearing.  In December, the juvenile court

---

[1] According to its website, Safe Families for Children is a nonprofit volunteer organization that provides temporary care for children with host families in order to provide the children with a safe living environment and avoid foster care while their parents are experiencing a crisis.  *Safe Families for Children*, http://safe-families.org (last visited Mar. 22, 2017).

[2] C.R.'s father was also incarcerated at this time and remained incarcerated throughout C.R.'s child-in-need-of-assistance (CINA) case.

terminated M.C.'s father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h) (2016).[3]

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). When a court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re M.W.*, 876 N.W.2d at 219 (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

The father claims the State failed to prove it offered reasonable efforts to reunify him with his child and achieve permanency. Specifically, he complains DHS did not provide him any visits with his child while he was incarcerated or offer any parenting services. He also complains he repeatedly asked DHS to place M.C. with various paternal relatives, all of whom lived out of state, but DHS failed to timely investigate and place the child with appropriate family members.

The State must make reasonable efforts to reunify the family as quickly as possible after a child has been removed from his or her parents' care and custody. Iowa Code § 232.102(7). The reasonable-efforts requirement is not,

---

[3] The juvenile court also terminated the mother's parental rights to M.C. and C.R.; she does not appeal. The court did not terminate the parental rights of C.R.'s biological father because it found the State had not offered that father reasonable efforts toward reunification, the father had attempted to maintain significant and meaningful contact with C.R., and C.R. had not been removed from her father's custody for the requisite statutory time period.

however, "viewed as a strict substantive requirement of termination." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Instead, it "impacts the [State's] burden of proving those elements of termination which require reasonable efforts." *Id.* In determining whether reasonable efforts have been made, the court considers "[t]he type, duration, and intensity of services or support offered or provided to the child and the child's family." Iowa Code § 232.102(10)(a)(1). "[T]he nature and extent of visitation is always controlled by the best interests of the child." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

Under section 232.116(1)(h), the court may terminate parental rights if the court finds the State has proved by clear and convincing evidence the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parents for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the custody of the parents at the time of the termination hearing. With regard to termination under this paragraph, "[t]he State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent" at the time of the termination hearing. *In re C.B.*, 611 N.W.2d at 493.

At the time of the termination hearing, M.C. was under the age of three, had been adjudicated CINA, and had been removed from her father's physical custody for at least six months without any trial periods at home. The record in this case clearly shows M.C. could not be returned to her father's care at the time of the termination hearing because her father was incarcerated for violating his probation and had a tentative release date of 2020. The underlying conviction

was for a sexual offense involving a child. The father only saw M.C. a few times between her birth and when her mother voluntarily placed her and her half-sibling with Safe Families for Children and did not share a bond with her. Given these circumstances, DHS determined it was not in the young child's best interests to have visitation with her father at the facility where he was incarcerated. Furthermore, DHS contacted the father's family members and submitted a request for a home study in the relatives' respective states. A home study with the father's mother was approved and another with the father's first cousin and his cousin's wife was conditionally approved.[4] The DHS supervisor testified DHS was focusing on the father's cousin and his wife because the couple was willing to care for both M.C. and C.R., whom DHS wanted to keep together. The supervisor also testified DHS had arranged a successful overnight visit between both children and the father's cousin and his wife and anticipated more visits to occur. Upon this record, we find the State proved by clear and convincing it made reasonable efforts to reunify the father with his child. We further find termination is in the child's best interests.

The father next claims his due process rights under the federal and state constitutions were violated because the State failed to make reasonable efforts. The father also asks for additional time and services for reunification. The father did not raise these issues before the juvenile court, and the court did not rule on

---

[4] The second home study was only conditionally approved because the cousin and his wife had never met M.C. The DHS supervisor testified DHS planned to resubmit the request for another home study now that the relatives and the child had met.

them.[5] Therefore, these claims are not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *see also In re K.C.*, 660 N.W.2d at 38 ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

Upon our de novo review of the record, we find the State proved the statutory grounds for termination by clear and convincing evidence and termination is in the child's best interests. Accordingly, we affirm the juvenile court's order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(h).

**AFFIRMED.**

---

[5] In his petition, the father maintains error was preserved for our review by filing a timely notice of appeal. "While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation." Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) (footnote omitted) (explaining, "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court"). The purpose behind our error-preservation rules is to ensure the juvenile court had an opportunity to avoid or correct errors and to provide the appellate court with an adequate record to review any purported errors. *See State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003). The father's timely notice of appeal, without more, is not sufficient to preserve this alleged error for our review. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003).