# IN THE COURT OF APPEALS OF IOWA

No. 17-1334
Filed January 23, 2019

IN RE THE MARRIAGE OF JANE M. FRICK
AND DUANE T. FRICK, JR.

Upon the Petition of
JANE M. FRICK,
    Petitioner-Appellee,

And Concerning
DUANE T. FRICK, JR.,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Wittig Zrinyi, Judge.

Duane Frick challenges the economic provisions arising out of the dissolution of his marriage. **AFFIRMED AS MODIFIED.**

Joshua Moon, Chad A. Swanson, and Erin Patrick Lyons (until withdrawal) of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, and Clarence Joseph May III of The May Law Firm, P.C., Dubuque, for appellant.

Jenny L. Weiss of Fuerste, Carew, Juergens & Sudmeier, P.C., Dubuque, for appellee.

Heard by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Duane Frick appeals the economic provisions of the district court's decree dissolving his marriage to Jane Frick, n/k/a Jane Saunders. We find a discrepancy occurred in the court's calculations and modify the economic distributions accordingly. We affirm as modified the district court decree regarding spousal support and life insurance.

## I.     Background Facts & Proceedings

Duane and Jane were married on April 16, 1994. They had two children together, who have both reached the age of majority. The older child was a senior in college at the time of trial, and the younger child lived and worked in the same town as the parents. At the time of trial, Duane and Jane were co-guardians for their grandchild C.F., born in 2011.

Jane is fifty-five years old. She earned a college degree in education prior to the marriage. Jane worked in the finance and insurance industry before the parties married, then in 1999 decided to stay home with the children, care for her ailing parents, and occasionally substitute teach. She maintained her teaching certification until about 2011.[1] She taught part time from 2009 to 2011, then homeschooled one child and stayed home with the parties' grandchild. She began working part-time for Mercy Health Center following the parties' separation in 2016, earning approximately eleven dollars an hour with no benefits.

Duane has worked in the finance and insurance industry since before the parties married. Duane is fifty years old. He earned a master's degree in 1998.

---

[1]  Recertification would require Jane take six continuing education credits.

At the time of trial, he was employed by Heartland Financial as a senior vice president. His contract provides for a salary of $150,000, benefits, restricted stock units, and offers the possibility of bonuses. Duane received a $10,000 signing bonus in 2016, and was guaranteed a bonus for 2016.

At Duane's prompting, in 2015 the parties downsized to a smaller home. They purchased a home for $254,000, carrying a mortgage of $195,296 at the time of trial. Throughout the marriage, Duane supervised the family's finances and Jane was not restricted to a budget. The new house has required significant repair work. Following their separation, Jane stayed in the marital home, and Duane moved in with his parents. Duane and Jane were paying rent and utilities for their adult daughters at the time of trial.

In February 2016, Jane filed a petition for dissolution of marriage. In her petition Jane requested temporary and permanent spousal support and attorney fees. A trial was held in February 2017. The parties were unable to reach an agreement on any financial provisions before trial.

The court entered its decree April 18. The parties filed multiple post-trial and post-decree motions. Among other issues, Duane moved pursuant to Iowa Rule of Civil Procedure 1.904(2) the court amend, enlarge, or modify its holdings relative to the economic provisions on appeal. On August 21, Duane filed the current appeal.

## II.     Standard of Review

We review equitable actions de novo. Iowa R. App. P. 6.907. We examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Because the district court is in a

unique position to hear the evidence, we defer to the district court's determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). While our review is de novo, the district court is given latitude to make determinations which we will disturb only if equity has not been done. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

### III. Analysis

**A.     Property Division.**     Duane raises multiple claims regarding the court's division of assets and debts. First, he argues the court transposed two numbers during its equalization calculation, resulting in an unequal distribution of marital assets and debts. Next, he claims the court should have credited him with co-responsibility for the mortgage in the division of property. Finally, he claims Jane dissipated assets between the time of trial and the decree.

Jane admits the equitable division of property was addressed by the district court but argues Duane did not preserve the issue of the district court's miscalculation for our review. The court heard and decided issues on the equitable distribution of property both at trial and in post-trial motions. Duane now challenges the equitable nature of multiple aspects of the property division. On our de novo review "we examine the entire record and adjudicate anew the issue of the property distribution." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

*Equalization calculation.* In the decree's equalization calculation, the court "divided equally" the retirement and financial assets, assigning values of $309,494 for Jane and $390,494 for Duane. According to the documents filed with the court, the correct sum of equally divided assets for each party would be $309,494,

meaning the court calculated $81,000 more in assets for Duane than existed. The decree's property division provisions are therefore based in part on the $81,000 error in its calculations of Duane's assets. Based on its asset and debt distribution calculations, the court ordered Duane to make a $6874 equalization payment to Jane. The court also ordered Duane's 2016 bonus be divided equally following the payment of debts. The court subsequently ordered on a rule 1.904 motion the transfer of a life insurance policy with a $7500 face value and an additional asset equalization payment of $3114 to Jane relating to the value of Duane's stock options. The court ordered Jane to be responsible for any of her attorney fees charged on the credit card assigned to Duane. The court's error in its equalization calculation and resulting equalization payments created a substantial benefit to Jane.

*Marital home.* The district court awarded the marital home to Jane. The court directed, "If possible, the petitioner shall refinance the mortgage on the residence so that the respondent is no longer obligated on the payment." It allocated the entirety of the mortgage debt to Jane in the division of assets and liabilities. The court did not include Duane's potential liability for the mortgage debt in its division of marital property. Duane claims the "if possible" phrasing resulted in his continuing potential liability for the mortgage debt, and he should have been assigned half the mortgage liability in the equalization calculation.[2] The court assigned the debt to Jane, and Jane took responsibility for making the monthly

---

[2] Duane acknowledges Jane refinanced the house following the notice of appeal and he is no longer an obligor on the debt. Prior to Jane obtaining refinancing, Duane paid a portion of his spousal support obligation directly to the mortgage lender.

mortgage payments. The court had no ability to require a bank to approve Jane's refinancing. Any continuing obligation on the part of Duane is purely speculative and if Jane had failed to make payments on the obligation the issue would have been properly raised in a contempt action. The court did not err in assigning the mortgage debt only to Jane in the division of property.

*Dissipated assets.* Finally, Duane claims Jane dissipated assets between the time of trial and the dissolution decree, spending over $14,000 on joint credit cards and the joint checking account. Both parties continued to use the bank accounts and credit cards.[3] In a motion to dismiss Jane claims this argument is moot following a subsequent collateral contempt action district court order holding values for the marital assets and debt assigned in a dissolution decree were fixed at the time of trial. Jane's motion to dismiss effectively concedes Duane is not responsible of Jane's post-trial credit card debt and the bank account values were established at the time of trial. Duane states the issue is not moot because his primary requested relief is not addressed by the court's order.

*Division of property.* We recognize Duane correctly identified a discrepancy in the court's calculations. We also consider the post-decree motions and reallocation of part of the debt initially assigned to Duane. "An equitable distribution of marital property, based upon the factors in [section] 598.21(5), does not require an equal division of assets." *In re Marriage of Kimbro,* 826 N.W.2d

---

[3] After this appeal was filed, Jane filed a contempt action against Duane for payment on one of the credit cards. On October 31, 2018, the court dismissed Jane's application for rule to show cause, which Jane filed with a motion to dismiss this portion of Duane's appeal. In addition to Jane's attorney fees, the court found pre-trial Disney charges were allocated to Jane when she was assigned the Disney vacation.

696, 704 (Iowa 2013). Substantial portions of the credit card debt assigned to Duane were reclassified in subsequent court orders as personal debt for Jane to repay. While Jane was assigned the marital home and her vehicle, she also assumed approximately ninety percent of the marital debt—all property related—while Duane only assumed the pre-trial marital debt from joint credit cards.

The size of the discrepancy in the court's calculations of the parties' assets is problematic in light of the district court's clear attempt to distribute their property equally. We vacate the decree's equalization payment from Duane to Jane and the judgment in favor of Jane relating to Duane's 2016 bonus. We vacate the stock-option equalization transfer in the decree and rule 1.904 order transferring a MetLife insurance policy and an additional equalization payment to Jane. We affirm the remainder of the court's division of property and liabilities.

**B.    Spousal Support.** The district court ordered Duane pay Jane $5000 per month in spousal support until Jane is sixty-six, then decreasing to $2500 until Jane turns seventy-two, at which point the spousal support payments end. Duane claims the court erroneously considered Jane's desire to support the grandchild the parties are guardian to in its award. In particular, Duane claims the district court granted Jane's requested spousal support, and Jane's spending in support of their grandchild was included in the financial affidavit used by the court to determine the award. In turn, Jane claims the award is equitable, and the court did not consider the guardianship. Even if the court had considered the guardianship, Jane argues the commitment to support C.F. was a marital obligation.

A spousal support award is circumstance-dependent, not an absolute right. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). "An alimony or spousal support award is justified when the distribution of the assets of the marriage does not equalize the inequities and economic disadvantages suffered in marriage by the party seeking the support and there is also a need for support." *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). The statutes on dissolution of marriage set specific criteria for a court to consider in whether to order spousal support. Iowa Code § 598.21A(1) (2017). These criteria include the length of the marriage, the age and health of the parties, the distribution of property, educational levels of the parties, earning capacity of the parties, the feasibility of the party seeking support to self-support at a standard reasonably comparable to the marriage, the time and training necessary for employment, and other factors the court determines to be relevant. *Id.* "[W]e will only disturb the trial court's award of spousal support if it fails to do equity between the parties." *Schenkelberg*, 824 N.W.2d at 486. We recognize the incomes supporting a marital couple often cannot support two households at the same standard of living as during the marriage. *See In re Marriage of Stenzel*, 908 N.W.2d 524, 534 (Iowa Ct. App. 2018).

We conclude the district court's spousal support award to Jane is inequitable under the facts of this case.[4] Jane is capable of a higher level of self-support with an earning capacity greater than the $12,500 income imputed by the

---

[4] We note the district court award was more than fifty percent greater than an award consistent with the American Academy of Matrimonial Lawyers guidelines. While not determinative in Iowa courts, the guidelines provide a "useful reality check" for whether the award is equitable. *See In re Marriage of Mauer*, 874 N.W.2d 103, 108 (Iowa 2016).

district court. While she may be unlikely to support herself at the standard of living reasonably comparable to her life with Duane, we find she is able to contribute to her own support to a greater degree than provided by her part-time job at the time of trial.

Going forward, we modify the district court's award of spousal support and order Duane to pay Jane $4000[5] per month until her sixty-sixth birthday.[6] The support shall then decrease to $2000 per month until it ceases when Jane turns seventy-two.

**C.    Life Insurance.** At the time of trial, the parties had five term life insurance policies and two accident/disability policies, primarily covering Duane. The district court required Duane to maintain his current level life insurance payable to Jane to cover his spousal support obligations in the event Duane predeceases Jane. The court specified, "When the alimony decreases, [Duane] may adjust the total of the value of death benefit held under life insurance relating to the total amount still owed under this order for alimony." Duane objects, and requests he only be required to carry life insurance sufficient to cover his outstanding obligation and the coverage be reduced to a present value amount.

"Life insurance should be limited to the amount necessary to secure an obligation." *In re Marriage of Mouw*, 561 N.W.2d 100, 102 (Iowa Ct. App. 1997). The district court specified the life insurance was intended "to replace any benefit from this alimony obligation not realized by [Duane]'s death." Therefore, Duane need not carry life insurance to cover spousal support payments already paid, he

---

[5]    As suggested by counsel for the appellant.
[6]    This reduction is not retroactive to the date of the dissolution decree.

must only carry sufficient life insurance for all outstanding future spousal support payments. We affirm the life insurance requirement but modify it: each year Duane may reduce the amount of life insurance he should carry by the amount of spousal support paid the prior year. At all times Duane must have sufficient life insurance to pay all outstanding spousal support obligations.

Duane cites no authority allowing life insurance carried to cover the insured's outstanding spousal support obligation to be reduced to present value. The present value method requires a set of speculative assumptions we are not prepared to make. We decline to order the required life insurance benefits be reduced to a present value.

We affirm the district court's life insurance requirement as modified.

**IV.    Appellate Attorney Fees.**

This court has broad discretion in awarding appellate attorney fees. *Okland*, 699 N.W.2d at 270. An award of appellate attorney fees is based upon the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *McDermott*, 827 N.W.2d at 687. Given the circumstances of the parties and our findings on appeal, we decline to award appellate attorney fees in this matter.

**AFFIRMED AS MODIFIED.**

Mullins, J., concurs; Tabor, P.J., concurs in part and dissents in part.

**TABOR, Judge** (concurring in part and dissenting in part)

I respectfully dissent from the majority's modification of the property division but concur in the remainder of the decision. I believe Duane failed to preserve error on the issue of the district court's calculation error.

The district court issued the dissolution decree in April 2017. Both parties filed motions to modify, enlarge, or amend under Iowa Rule of Civil Procedure 1.904(2). Duane asked the court to reconsider its equalization payment but did not allege an error in arithmetic. Rather, Duane argued the court was "silent" as to its calculations.[7] The court held a hearing on the reconsideration motions in July 2017. Duane did not flag any alleged calculation error for the judge at the hearing or in subsequent district court filings.

Our de novo review in dissolution appeals and our mission to do equity between former spouses does not excuse the parties from properly presenting their claims in the district court. *See In re Marriage of Full*, 255 N.W.2d 153, 156 (Iowa 1977) ("[I]t is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew *on those propositions properly presented, provided issue has been raised and error, if any, preserved* in the trial proceedings." (emphasis added)).

---

[7] In the error preservation section of his appellant's brief, Duane asserts:

> Noting a mathematical error in the District Court's calculations of the assets it had awarded to Duane and, therefore, in its ordered equalization payment, Duane filed a motion under Iowa R. Civ. P. 1.904(2) to ask the Court to amend its Judgment to correct the error, or at least to show the calculation the District Court had made in order to arrive at the ordered equalization payment.

This assertion is somewhat disingenuous, as Duane's rule 1.904(2) motion did not mention any mathematical error.

Our preservation rules ensure district courts the opportunity to avoid or correct errors. *See State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003) (finding practice of casting fault on the district court for failing to rule correctly on an issue as "fundamentally unfair" when the party did not give that court an opportunity to fix its mistake). The preservation rules also prevent a party from "remain[ing] silent . . . in the face of error . . . and subsequently assert[ing] error on appeal if the outcome in the trial court is unfavorable." *Id.* Had Duane pointed out the apparent transposition of digits to the district court (assigning values of $309,494 for Jane and $390,494 for Duane), the court would have had a chance to recalculate the equalization payment. But Duane did not raise the same issue below that he advances on appeal. Duane did not identify for the district court what he calls a "clear and obvious error" in his reply brief. It is fundamentally unfair to reach the math-error claim because it was not properly presented to the district court. *See In re Marriage of Tieskoetter*, No. 16-2111, 2018 WL 558509, at *8 (Iowa Ct. App. Jan. 24, 2018) (finding ex-husband failed to preserve issue for review by failing to argue in his rule 1.904(2) motion that court mistakenly included loan in liability calculation). I would not disturb the equalization payment.