In re the MARRIAGE OF Loren Jay MOUW and Dawn Renae Mouw.

Upon the Petition of Loren Jay MOUW, Petitioner–Appellant,

And Concerning

Dawn Renae Mouw, Respondent–Appellee.

No. 95–1933.

Court of Appeals of Iowa.

Jan. 29, 1997.

Daniel L. Bray, Iowa City, for petitioner–appellant.

William L. Meardon and Margaret T. Lainson of Meardon, Sueppel, Downer & Hayes, Iowa City, for respondent–appellee.

Heard by SACKETT, P.J., and STREIT and VOGEL, JJ.

SACKETT, Presiding Judge.

Petitioner-appellant Loren Jay Mouw challenges the equity of an alimony award following his fifteen-year marriage when both he and his former wife, respondent-appellee

Dawn Renae Mouw, advanced their educations. We affirm as modified.

Loren and Dawn married in 1980. At the time, Loren was nineteen and a carpenter. Dawn was eighteen and a high school graduate. By the time the marriage had ended, the couple had three children; Loren was a neurosurgeon; and Dawn had a bachelor's degree and had nearly completed her master's degree. She intended to get a doctorate degree in computer science. Collectively, the parties had a negative net worth of about $100,000, but both had substantial income potential.

In the dissolution decree, Dawn was given physical care of the children born in 1985, 1987, and 1991. Loren was ordered to pay $2500 a month as child support for the three children, reduced as the number of children entitled to support decreased. He was ordered to maintain health insurance on the children and pay one-half of uncovered health care expenses. He was given one income tax exemption each year and two every other year. Loren was ordered, as long as he had any support obligation under the decree, to maintain one million dollars in life insurance with Dawn as the beneficiary.

Dawn was given the family residence with an equity of approximately $40,000. Loren was ordered to pay his student loans and loans from Dawn's family, such debts totaling approximately $150,000. Additionally, he was ordered to pay $3442 a month as spousal support for ten years, to terminate in the event of Dawn's death should it occur earlier.

Loren does not challenge Dawn's right to alimony or spousal support. He only contends the award is excessive.

 We review de novo. *In re Marriage of Craig,* 462 N.W.2d 692, 693 (Iowa App.1990). While not bound by the trial court's factual findings, we give them weight in considering the credibility of witnesses. *In re Marriage of Farrell,* 481 N.W.2d 528 (Iowa App.1991).

Loren and Dawn have both expended considerable efforts in this marriage advancing their educations and futures as well as assuming child care responsibilities. They both have been employed outside the home in addition to pursuing educational opportunities. At times one earned the greater share of the family income, and at other times, the other. We find they both contributed substantially. Both leave the marriage with educations enabling them to go forward with careers in fields that are anticipated will generate above-average income. While the education each received during the marriage will provide the key to open the door to well-paying professions, the income will come only with additional hard work and dedication.

A large portion of the record before the trial court focused on Loren's income potential. The evidence, conflicting in part, shows that based on the past structure of the medical delivery system in this country, Loren's potential income is substantial. However, the evidence further indicates the medical delivery system is undergoing changes and the income level of specialties may not be what it once was. Less evidence focuses on Dawn's potential in the field of computer science and the nature of the value of such a degree is generally unproven.

Loren contends the trial court incorrectly found his income potential to be $600,000 a year. He contends the trial court should have found only that he could take in $600,000 annually as fees but it would be reduced by office expenses and insurance.

The trial court found Loren testified he projected his gross income would be $600,000. Loren suggested the trial court consider the $600,000 adjusted gross income when it referred to gross income or gross fees. Our review of the evidence convinces us the $600,000 projection is gross income or billings and there would be approximately $350,000 in business expenses and uncollected billings.

The trial court adapted an analysis of Richard Stevens, finding the value of Loren's future earnings contributable to Dawn to be $310,064, and when figuring monthly payments at six percent interest, the monthly amount should be $3442. The trial court made a conclusion of law that the court in *In re Marriage of Francis,* 442 N.W.2d 59, 65–65 (Iowa 1989), found no error in the compu-

tation of Stevens' measure of the wife's contribution to the husband's earning capacity.

■ On our review, we come to the conclusion that Loren and Dawn received education during the marriage which will allow them to maintain an excellent life style and more than adequately provide for their children. Under current conditions, it appears Loren's income potential may be greater than Dawn's. Dawn still needs three more years to complete her doctorate degree. There is evidence with the doctorate degree she should have the ability to earn $150,000 annually. We consider both parties' income potential. *In re Marriage of Stewart,* 356 N.W.2d 611, 613 (Iowa App.1984).

■ Each party has chosen his or her respective field. The entry into the chosen field was the result of certain personal aptitudes and abilities. The fact that the field of one may generate more income than the field of the other is not the controlling factor in the alimony award where both have the education and potential to supply for themselves a very adequate living. Loren is not the only one who will have significantly increased earnings by virtue of education acquired during the marriage.

Dawn has the primary responsibility for the children and is currently receiving very adequate child support. She leaves the marriage with an approximate $40,000 net worth, while Loren leaves the marriage with a $150,000 debt load. Loren had an adjusted gross income at the time of the proceeding of approximately $260,000 annually. There was evidence his future income would not increase substantially.

We do not, as the trial court appears to have done, interpret the decision in *Francis* as a general approval of Stevens' formula in all cases. Rather, we find it to be an approval based on the specific facts of *Francis.* The facts here differ in a number of respects, most markedly because there is evidence the income of a medical specialist is on the decline and Dawn is educated in a field that has a good future.

■ We consider Stevens' testimony, but the issue before us is not to arrive at a dollar figure using a series of projected incomes. The economic provisions of a dissolution decree are based on a number of factors, including the length of the marriage, the age and health of the parties, the parties' earning capacities, the levels of education, and the likelihood the party seeking alimony will be self-supporting at a standard of living comparable to the one enjoyed in the marriage. *See In re Marriage of Geil,* 509 N.W.2d 738 (Iowa 1993); *In re Marriage of Versluis,* 521 N.W.2d 760 (Iowa App.1994).

■ Education obtained during a marriage that will enhance future earnings is a proper factor to consider in assessing the equity of the economic provisions of a dissolution decree. *See Francis,* 442 N.W.2d at 61; *In re Marriage of Janssen,* 348 N.W.2d 251, 252 (Iowa 1984); *In re Marriage of Horstmann,* 263 N.W.2d 885, 891 (Iowa 1978); *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983). Yet, the income will be generated by work performed after the dissolution is finalized.

■ *This is not so much a computation of dollars and cents as a balancing of equities. The uncertainty in both the medical and computer markets makes accurate prediction of future incomes speculative. Considering all the factors, we reduce the alimony to $2000 a month for ten years. We modify the provision Loren carry life insurance by reducing the amount he should carry by $50,000 every twelve months. Life insurance should be limited to the amount necessary to secure an obligation.* See In re Marriage of Lytle, *475 N.W.2d 11, 12 (Iowa App. 1991). In all other respects, we affirm.*

We award no appellate attorney fees. Costs on appeal shall be taxed one-half to Loren and one-half to Dawn.

**AFFIRMED AS MODIFIED.**